**United States District Court**
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7
8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   UNITED STATES OF AMERICA,                    No. CR 11-00099 WHA
11             Plaintiff,
12      v.                                        **ORDER RE MOTION TO**
                                                  **PRECLUDE ENFORCEMENT OF**
13   LAWRENCE R. GOLDFARB and                     **THE DEFERRED**
     BAYSTAR CAPITAL MANAGEMENT,                  **PROSECUTION AGREEMENT**
14   LLC,
15             Defendants.
16   _____/
17
18                            **INTRODUCTION**
19          In this alleged investment scam prosecution, the immediate issue is whether a deferred
20   prosecution agreement must be vetted under Federal Rule of Criminal Procedure 11 in order to
21   render admissible statements and admissions made therein by an accused.
22                             **STATEMENT**
23          The background of this action has been set forth in a prior order (Dkt. No. 38).  In brief,
24   the United States has filed an information charging defendants with wire fraud.  Indictment
25   having been waived, the information alleges that investors were defrauded when defendants did
26   not disclose distributions and reinvested those distributions in other entities, some of which
27   defendants owned.
28

United States District Court
For the Northern District of California

The SEC has also filed a parallel complaint against defendants alleging similar conduct. *See Securities and Exchange Commission v. Lawrence R. Goldfarb and Baystar Capital Management, LLC*, CV-11-0938 WHA (N.D. Cal. Mar. 1, 2011). In that civil action, the SEC filed written consents to the proposed entry of judgment, which defendant Lawrence R. Goldfarb signed on behalf of himself and defendant Baystar Capital Management, LLC. On March 16, 2011, judgment was entered in the civil action.

On March 1, 2011, both defendants and the United States signed a deferred prosecution agreement ("DPA"), wherein the United States agreed to dismiss the criminal charges pending by way of information if defendants complied with the terms of the DPA. Defendants were represented by experienced and sophisticated counsel, who also signed the DPA along with their clients. The whole purpose of the DPA was to provide defendant Goldfarb, an experienced and sophisticated business person who graduated from Georgetown University Law Center, an opportunity to avoid a criminal record. This was done to extend leniency and to provide an incentive for restitution.

Under the provisions of the DPA, defendants agreed "to pay restitution of $12,112,416 pursuant to the terms of the Judgment in *Securities and Exchange Commission v. Lawrence R. Goldfarb* and *Baystar Capital Management, LLC*, CV-11-0938 (N.D. Cal. Mar. 1, 2011)" (DPA ¶ 5). Defendants also agreed that if they committed a material and knowing breach of the DPA, the government could prosecute them for the conduct alleged in the information (*id.* ¶ 11). Significantly, the DPA included paragraph 14:

> In the event of a breach of this Agreement and any resulting prosecution for the charges in the Information and any other charges, the defendants agree, in the trial or adjudication of those charges:
>
> a.     To stipulate to the admissibility into evidence of the Statement of Facts and agree not to offer any contradictory evidence or arguments;
>
> b.     To stipulate to the admissibility of all statements made by the defendants (including all statements made during so-called proffers sessions and notwithstanding any other agreements made at the time of those proffer sessions and including this Agreement) and agree not to offer any contradictory evidence or arguments;

2

c.      To waive any claim under the United States Constitution,
Rule 410 of the Federal Rules of Evidence, or any other
rule, that statements made by the defendants prior to or
subsequent to this Agreement, or any leads derived
therefrom, should be inadmissible or should be suppressed.

The judgment in the related SEC case scheduled payment of over $14 million in five

installments, with defendants paying the balance no later than March 15, 2012.  Defendants

timely paid three of the payments in the amounts of $30,000, $25,000, and $25,000, with

interest, on March 24, June 14, and December 13, 2011, respectively.  Nevertheless, defendants

did not pay the $1,025,000 amount due on September 15, 2011, or the balance due on March 15,

2012.  In June 2012, now more than a year ago, defendants were found to be in civil contempt

for their failure to comply with the SEC judgment.  The government claims that defendants have

paid $80,000 toward that judgment but have failed to pay $13,984,094 plus interest.

On March 16, 2012, the government notified defendants that they were in material breach

of the DPA.  On April 23, 2012, defendants were arraigned on the information and they formally

waived their right to prosecution by indictment.  Defendants then filed a motion to dismiss the

criminal charges against them, which was denied by order dated September 5, 2012 (Dkt. No.

38).  Trial is scheduled for November 4, 2013.

Defendants now move to preclude enforcement of the DPA, more than two years after

signing the agreement with their counsel.  In particular, defendants argue that the government

will prevent them from mounting a defense at trial by enforcing paragraph 14 of the DPA.   This

order follows full briefing and oral argument on defendants' motion.

**ANALYSIS**

As presented by the parties, the legal issue is whether the DPA can be enforced absent

the procedural safeguards of Federal Rule of Criminal Procedure 11(b).  Admittedly, no Rule 11

colloquy took place.  Neither side asked for such a hearing back when the DPA was done.

This order addresses the admissibility of the signed "statement of facts" appended to the

DPA and which was referenced by paragraph 14(a).  The order, however, does not consider the

admissibility of any other statements, such as ones made by defendants or counsel during so-

3

called proffer sessions, as the Court does not have before it any such statements or circumstances concerning proffers.

Rule 11(b) demands certain procedures "to assist the district judge in making the constitutionally required determination that a defendant's *guilty plea* is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (emphasis added). "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Id.* at 466. Accordingly, Rule 11(b)(1) requires that a judge engage in a colloquy with a defendant by personally addressing him in open court and determining that he understands the nature of the charges against him as well as the consequences of his guilty plea. Rule 11(b)(3) also requires that a judge determine the factual basis for a defendant's offense before entering judgment on his guilty plea.

No decision has ever extended Rule 11 to a DPA. Nevertheless, defendants now say (they did not so say in 2011) that the parties should have vetted the DPA via Rule 11 when it was entered into, colloquy and all. Defendants rely on *United States v. Zhu*, CR-05-10153 (D. Mass. June 16, 2005) (Judge George O'Toole, Jr.).

This argument fails for three reasons. *First*, Rule 11(b) states that its procedural safeguards apply to guilty or nolo contendere pleas, not plea agreements. Thus, even assuming defendants' logic that the DPA was like a plea agreement, Rule 11(b) did not apply since "[t]he plain text of Rule 11 compels distinct treatment of the plea agreement and the plea itself." *In re Vasquez-Ramirez*, 443 F.3d 692, 695 (9th Cir. 2006) (internal quotations omitted); *compare* Fed. R. Crim. P. 11(a), (b) (discussing pleas) *with* Fed. R. Crim. P. 11(c) (addressing plea agreements).

*Second*, even though the DPA did entail an admission of wrongdoing, our court of appeals has applied Rule 11 narrowly to guilty pleas and not to stipulations of facts establishing guilt. *See, e.g.*, *Adams v. Peterson*, 968 F.2d 835, 842–43 (9th Cir. 1992); *and United States v. Terrack*, 515 F.2d 558, 559–63 (9th Cir. 1975). In *Terrack*, the parties filed a stipulation of facts on which the district court found the defendant guilty of a drug offense. The defendant argued that the stipulation thus constituted a de facto guilty plea, and as such, required judicial

4

examination of the defendant under Rule 11.  Although the district judge had personally questioned the defendant about the stipulation, the appellate court went on to hold that Rule 11 was inapplicable to a stipulation of facts.  *Id.* at 560.  Our court of appeals has since confirmed that "Rule 11 applies only to guilty pleas and pleas of [n]olo contendere, not to stipulations," even when there was no indication that the district court had personally discussed a stipulation with a defendant.  *United States v. Stapleton*, 600 F.2d 780, 782 (9th Cir. 1979).  As such, Rule 11(b) did not apply to the DPA simply because paragraph 14 outlined stipulations to certain facts and statements.

*Third*, defendants' reliance on *Zhu* is misplaced.  Defendants do not rely on any court decision from that matter.  Instead, they point to the government's briefing on how Rule 11 does not require a colloquy for a pretrial diversion agreement in that action.  This not only fails to support defendants' contention that Rule 11 applies to DPAs, but also does not provide any binding or persuasive authority for this order to consider.

Accordingly, the order finds the DPA was not a guilty plea and that the prophylactic protections of Rule 11(b) did not apply to the statement of facts.  Under paragraph 14(a) of the DPA, the appended (and signed) statement of facts is thus admissible against defendants — without prejudice to defendant Goldfarb being able to take the stand to explain it away.  Furthermore, it is unnecessary to address defendants' contention that they can withdraw from the DPA under Rule 11(d)(1), given that this rule only governs withdrawals from guilty and nolo contedere pleas.

*                *                *

Contrary to the government, this order will relieve defendants and their counsel from the agreement in paragraph 14(a) "not to offer any contradictory evidence on arguments."  While defendants' signed statement of facts will be usable against them at trial, the accused will still be allowed to defend themselves in the usual way.  The DPA contemplated that if the agreement was violated by defendants, they would be prosecuted, meaning there would be a trial.  At a trial, an accused has a Fifth and Sixth Amendment right to defend himself.  Were we to say that a defendant must stand mute and make no defense, then a DPA would amount to a guilty plea and

**United States District Court**

For the Northern District of California

Rule 11 should be followed. In short, the signed statement of facts will be admissible against the Rule 11 challenge (subject to proper authentication) but the defense will be relieved of its promise not to offer contradictory evidence.

*       *       *

As a final resort, defendants argue that paragraph 14 is unenforceable because Judge Charles R. Breyer recently struck "[a] similar provision" in another matter (Br. 11). For support, defendants include a transcript of proceedings from that action, *United States v. Lap The Chung and Bob Yuen*. No. CR-11-0097 (N.D. Cal. Nov. 9, 2012) (Judge Charles R. Breyer).

This is a mischaracterization of the *Lap The Chung* proceedings. There, Judge Breyer discussed the unfairness in the government using a defendant's statements against him after a district court rejects a Rule 11(c)(1)(c) plea agreement and the defendant withdraws from that agreement. That is not the situation here. Nor has there been the kind of unfairness that Judge Breyer considered, given that the government is considering the use of defendants' statements against them only after their material breach of the DPA. Judge Breyer's discussion from *Lap The Chung* thus does not prevent the government from enforcing the DPA.

*       *       *

In general, the government is to be commended for being willing to entertain DPAs in order to give an alleged wrongdoer an opportunity to make good on restitution and to right the wrongs that he has allegedly committed, thereby avoiding a criminal conviction. Ordinarily, potential defendants have no right to such leniency and consideration. If beneficiaries of this leniency and consideration are allowed to renege on their DPAs, the government will be less inclined, if at all, to entertain such leniency in the first place.

Here, defendants were represented by experienced and sophisticated counsel. Defendant Goldfarb himself was a lawyer, as well as an experienced and sophisticated business person. There is no declaration, nor any claim, that Goldfarb did not understand what he was getting himself into when he signed the DPA along with his counsel. The Court is convinced and therefore finds that Goldfarb was aware of the consequences of his failure to adhere to the DPA and that defendants did not even come close to making good on the restitution due under that

6

agreement.  As such, defendants knew all along that their failure to make restitution would lead to the admissibility of the statement of facts appended to the DPA.

## CONCLUSION

The statement of facts appended to the DPA is admissible against defendants (subject to authentication).  The defense, however, will be free to otherwise mount its defense and will be not be bound by the promise to offer no contradictory evidence.

**IT IS SO ORDERED.**

Dated:  September 25, 2013.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

7